## H. L. Barnes, Plaintiff in Error, v. Ora Ward et al., Defendants in Error.

1. FRAUDULENT CONVEYANCES, § 109*—*when debtor may prefer creditor.* The right of a debtor to pay one creditor in preference to another, or to transfer property in satisfaction of or to create a lien upon it for the security of a particular debt, in preference to and to the exclusion of other liabilities, always existed at common law.

2. FRAUDULENT CONVEYANCES, § 200*—*when mortgage cannot be set aside.* A bill by a creditor to set aside a third mortgage is properly dismissed for want of equity when it appears that there was a full consideration for such mortgage, since the debtor had the right to secure the mortgagee in preference to the plaintiff creditor.

3. MORTGAGES, § 50*—*when mortgage delivered.* Evidence of delivery of a mortgage to the recorder for the mortgagee, and the delivery of the recorder's receipt and the note to the mortgagee on the same day, is sufficient to show a delivery of the note and mortgage to the mortgagee and an acceptance of them by him.

4. MORTGAGES, § 375*—*when strict foreclosure proper.* As a general rule, strict foreclosures are not favored in equity, but such foreclosure may be allowed where there are other creditors and the property is of less value than the debt, the mortgagor is insolvent and the mortgagee is willing to take the property in discharge of his debt.

5. COSTS, § 6*—*when taxation erroneous.* Where a creditor brought a bill to set aside a mortgage he was properly taxable with all costs caused by the filing of the original bill and the trial of the issues made thereon, but it was error to tax costs properly arising out of a cross-bill for foreclosure and the issues thereon to such complainant.

Error to the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1914. Affirmed in part, reversed in part and remanded with directions. Opinion filed October 16, 1914.

**Statement by the Court.** This is a bill in chancery filed January 24, 1912, by H. L. Barnes against Ora Ward, Bernice Ward and J. S. Ward to set aside a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

mortgage dated October 23, 1911, executed by Ora
Ward and his wife, Bernice, to his father, J. S. Ward,
on thirty acres of land occupied by the mortgagors
as their home in McLean county. The bill alleges
that Barnes on October 28, 1911, recovered a judgment
in the Circuit Court of McLean county against Ora
Ward for $642.56, and on the same date he recovered
another judgment for $2,375.70 against Ora and Ber-
nice Ward; that at the time of the rendition of said
judgments Ora Ward was the owner in fee simple of
said land subject to two mortgages aggregating $4,500;
that on October 23, 1911, Ora and Bernice Ward, for
a pretended consideration of $4,000, made and re-
corded a third mortgage upon said real estate to J. S.
Ward, father of Ora Ward, thereby disposing of the
full value of their equity without any consideration,
with intent to defraud complainant and hinder and
delay him in the collection of his judgments; that said
judgments are for an indebtedness of said Ora Ward
that existed before the making of said third mort-
gage; that on October 28, 1911, executions were issued
on said judgments to the sheriff of McLean county
commanding him that he cause to be made the sum of
$3,027.26, the amount of said judgments; that said exe-
cutions were served by said sheriff on the defendants
on the day of their date, and are still in his hands un-
satisfied; that said note and mortgage dated October
23, 1911, were not delivered to J. S. Ward prior to
the rendition of said judgments; that said J. S. Ward
is fraudulently holding said mortgage to cover up the
property of said Ora Ward; that said Ora and Ber-
nice Ward have no personal property or real estate
except the real estate covered by said mortgage; and
that said judgments are still in full force and entirely
unpaid. The bill calls for answers under oath and
to interrogatories thereto attached, and prays that
said third mortgage be set aside and declared void.
The defendants filed their several answers to said bill,
under oath, in which the defendants set up a full con-

sideration for the $4,000 note and mortgage dated October 23, 1911, and give the details of the business transactions of the defendants. They allege the delivery of the note and mortgage to J. S. Ward on the day of their date and deny all fraud.

J. S. Ward on March 25, 1912, filed a cross-bill praying for a strict foreclosure of the two prior mortgages and the third mortgage which the original bill prays to have vacated. The cross-bill alleges that cross complainant is the owner of the three notes and mortgages. The first two notes and mortgages were past due before the cross-bill was filed; the third mortgage secures a $4,000 note due in five years from October 23, 1911. It contains a provision that the mortgagors will cause the buildings on said premises to be insured for their full insurable value and the policy assigned to the mortgagee, and on failure to insure, at the option of the legal holder of said note, the indebtedness secured may be declared due and payable at once. The cross-bill further alleges that the mortgagors have failed to insure said buildings and cross complainant has been compelled to insure them, and that there is now due on said three notes and mortgages $8,253.19; that said Ora and Bernice Ward are insolvent and said mortgaged premises are meager and scant security and insufficient to pay the amount due. Answers to the cross-bill were filled by Ora Ward, Bernice Ward and H. L. Barnes.

The issues were joined on both bills and the cause was referred to the master to report the evidence with his conclusions. He reported the value of the mortgaged premises to be $7,500; that there was due J. S. Ward from Ora and Bernice Ward, $8,603.99 on the three notes and mortgages and that the equities were with the cross complainant and the defendants in the original bill. The complainant in the original bill filed objections before the master which were overruled. The objections were ordered to stand as exceptions

before the court, and on a trial were again overruled and a decree entered dismissing the original bill for want of equity, and finding that the amount due J. S. Ward on the notes secured by the mortgages so much exceeds the value of the mortgaged property that no benefit can inure to defendant or any creditor from a sale of the premises, and that Ora Ward and Bernice Ward within five days convey the premises to J. S. Ward in full satisfaction of said mortgage indebtedness, and that upon H. L. Barnes paying to J. S. Ward said $8,603.99, with legal interest from the date of the decree together with the costs, within six months from the date of this decree, that J. S. Ward convey said premises to H. L. Barnes, and that H. L. Barnes pay the costs of this suit. H. L. Barnes has sued out a writ of error to review the decree.

A. M. HESTER, for plaintiff in error; WELTY, STERLING & WHITMORE, of counsel.

DeMANGE, GILLESPIE & DeMANGE, for defendants in error.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

It is contended that the court erred in dismissing the original bill for want of equity. It is not controverted but that the two first mortgages, one for $2,000 to Sophia Lingg, assigned to J. S. Ward, and the other to J. S. Ward for $2,500, are bona fide and were given, one for part of the purchase money, and the other to obtain money with which to make the cash payment at the time the mortgagors purchased the real estate covered by these mortgages. The evidence shows conclusively that on October 23, 1911, when the note for $4,000 and the mortgage securing it were executed, Ora Ward was indebted to J. S. Ward in the further sum of $4,000—$2,000 of which was for a liability on

a note, which J. S. Ward, as surety for Ora Ward, had executed to plaintiff in error, on the promise of Ora Ward to secure him by a mortgage on the premises. "The right of a debtor to pay one creditor in preference to another, or to turn out property in satisfaction of or to create a lien upon it for the security of a particular debt, in preference to and to the exclusion of other liabilities, always existed at common law." *Farwell v. Nilsson,* 133 Ill. 45; *Merchants' Nat. Bank v. Lyon,* 185 Ill. 343; *Murry Nelson & Co. v. Leiter,* 190 Ill. 414. There was no error in dismissing the original bill for want of equity since there was a full consideration for the third mortgage, and Ora. Ward had the right in good faith to secure his father to the exclusion of the plaintiff in error. Whatever may be said of the justice or equity of this rule, its existence is too firmly established to be questioned. *Morriss v. Blackman,* 179 Ill. 103.

It is contended that the note and mortgage were not delivered before the judgments were rendered. J. S. Ward was seventy-five years of age, with poor eyesight and forgetful, and for some time prior to the execution of the note and mortgage had been insisting that he be secured. He was not present when the note and mortgage were executed, but had been informed by the mortgagors that they were going to Bloomington to execute them, and they were prepared and executed at his request. Ora Ward testified that his father was uneasy and that on October 22nd he told his father that he would go and give him a mortgage and his father said, all right go to Lester Martin, an attorney, and have him attend to it and that he, J. S. Ward, would pay the expense; that Martin prepared the papers and sent Ora Ward to have the mortgage recorded; that Ora Ward did record the mortgage and directed it to be mailed to his father at Colfax, when recorded, and got the recorder's receipt and the note, and they were delivered to J. S.

Ward by Bernice Ward the evening of October 23rd. Bernice Ward testified to the same effect. The proof shows a delivery of the mortgage to the recorder for the mortgagee and the delivery of the recorder's receipt and the note to the mortgagee the same day; these facts constituted a delivery of the note and mortgage to the mortgagee and an acceptance of them by him.

It is also contended that the court erred in decreeing a strict foreclosure. The decree is an unusual one, in not giving Ora Ward and Bernice Ward any time in which to redeem the premises, and in commanding them "to convey by warranty deed within five days from the rendition of this decree the said premises to J. S. Ward in full satisfaction of the said indebtedness secured by said mortgages," but they have neither assigned any error nor are they making any complaint about the decree.

The decree gives H. L. Barnes, the judgment creditor, six months from the entering of the decree within which to pay to J. S. Ward the sum of $8,603.99 with legal interest and the costs, and directs that upon the making of such payment J. S. Ward convey said premises to H. L. Barnes by a proper conveyance free from the liens of said mortgages or any incumbrances arising out of any act of said J. S. Ward.

The original bill, which is verified by plaintiff in error, alleges that by the execution of the third mortgage Ora and Bernice Ward by such act did then and there part with the full value of their equity to a relative. The cross-bill alleges that the mortgaged premises are meager and scant security for the sum of $8,253.10, the amount due at the time the bill was filed, and wholly insufficient to pay the same.

Ora and Bernice Ward in their answer to the cross-bill agree that J. S. Ward may take the mortgaged premises in discharge of the amount due him, freed from homestead and every interest of said defendants

in the premises, and it is admitted by all parties that the mortgagors are and were insolvent on October 23, 1911.

The plaintiff in error in his answer to the cross-bill admits that the mortgaged premises are meager and scant security for a bona fide indebtedness of $8,253.10, as set forth by cross complainant, but says said premises are ample security for the indebtedness really owing by Ora Ward, secured by mortgage.

The evidence shows that the property is worth from $7,000 to $7,500, no witness puts it over $7,500 and Roy Barnes, who is a banker and the son of plaintiff in error, and who made the loans for plaintiff in error, testified that Ora Ward tried to sell it to him for $8,500 in payment of his indebtedness before the $4,000 mortgage was given, but that he was asking too much. The master found the mortgaged premises to be worth $7,500, and there is no exception to that finding. It is clear that the value of the property was less than the mortgage incumbrance against it.

While it is a general rule that strict foreclosures are not favored in equity where there are other creditors, yet the rule is not an arbitrary one and there are exceptions to it. A strict foreclosure may be allowed where there are other creditors and the property is of less value than the debt, the mortgagor is insolvent and the mortgagee is willing to take the property in discharge of his debt. *Illinois Starch Co. v. Ottawa Hydraulic Co.*, 125 Ill. 237. The object of giving time for redemption is to make the property pay as much of the debts of the mortgagor as the property is worth. It was said in the case last cited: "The court of equity will not, by a decree of strict foreclosure, sacrifice the just and equitable rights of creditors, or of those holding second liens, or the equity of redemption. Neither will the court of conscience sacrifice or endanger the rights of a complainant who comes within her portals with a just cause, and hold-

ing the oldest and preferred lien and best equity, for the bare possibility of a wholly improbable benefit to one having a second lien and subordinate equity." *Moffett v. Farwell*, 123 Ill. App. 528; affirmed in 222 Ill. 543.

The evidence concerning the value of the property and the admission of plaintiff in error that it was worth less than the amount of the mortgages against it show that the plaintiff in error was not harmed by the strict foreclosure. To have foreclosed the mortgages in the ordinary method would have made a large bill of unnecessary and useless costs. The mortgagors consented to a strict foreclosure and the mortgagee agreed to accept the property in satisfaction of his debt. Plaintiff in error might redeem the same and get the title of the Wards with immediate possession, disincumbered of the homestead of the Wards, without permitting the mortgage debt to be increased by the accumulation of interest and the costs of the mortgage sale. The court gave plaintiff in error six months to redeem from the decree. There was no error against plaintiff in error in the granting of a strict foreclosure.

The court taxed all the costs of the case against plaintiff in error. The mortgagee to secure a strict foreclosure agreed to accept the property in satisfaction of the mortgage debt and costs of the foreclosure. There was no reason why the costs that appertain to the foreclosure should have been taxed against plaintiff in error. The plaintiff in error was properly taxable with all costs caused by the filing of the original bill, and the trial of the issue made thereon. The court erred in taxing all the costs properly arising out of the cross-bill and the issue thereon to plaintiff in error. If there were costs made in said matter by the defense of plaintiff in error against the strict foreclosure that otherwise would not have been made, such costs were taxable to plaintiff in error in the discretion of the court. The decree is affirmed in all particulars ex-

cept. as to the taxation of costs; that part of the decree taxing the costs against the plaintiff in error is reversed and the cause remanded with instructions to apportion the costs and give plaintiff in error ninety days after the entering of the decree in which to redeem if he shall so desire. The costs of this writ of error will be taxed one-half to J. S. Ward and one-half to plaintiff in error.

*Affirmed in part, reversed in part and remanded with directions.*